UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY PINGEL,

                Plaintiff,

vs.

SPEEDWAY LLC,

                Defendant
_____/

Case No. 13-13919
HON. GEORGE CARAM STEEH

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 13)

This premises liability action arises out of the slip and fall of Plaintiff Nancy Pingel at Defendant Speedway's convenience store. Pingel, a resident of Michigan, filed this action in the Genesee County Circuit Court. Speedway, a Delaware limited liability company and a citizen of the states of Delaware and Ohio, removed the case to this court pursuant to 28 U.S.C. §§ 1332 and 1441. Speedway filed its motion for summary judgment, which has been fully briefed. A hearing was held on August 11, 2014. Because the court finds there is no question of material fact on the issue of Speedway's liability, Speedway's motion is granted as set forth below.

## BACKGROUND

On January 6, 2013, Pingel visited Speedway's Davison, Michigan store, as she did almost every day, to purchase a cappuccino. Pingel Dep. at 30-31, 34 (Mar. 14, 2014). It was cold and wet outside. *Id.* at 35. Around 3:46pm, Pingel entered the store, *Id.* at 70, passing "CAUTION: Wet Floor" signs placed at the front. *Id.* at 38, 66. Pingel

-1-

acknowledges that she saw these signs when she walked into the store and understood that it meant she should exercise caution. *Id.* at 66-67, 71-72, 99-100. Pingel proceeded to the cappuccino machine in the middle of the store, poured her cappuccino, and began walking towards the ice machine to cool off her beverage. *Id.* at 38, 43. As Pingel walked to the ice machine, she slipped on an unidentifiable clear liquid substance—which she believed to be water—and fell, spilling her cappuccino on the ground. *Id.* at 38, 52, 55. Pingel testifies she was probably in the store about two minutes before she fell. *Id.* at 43. Pingel claims she was looking at the floor while walking, as people tended to drop items on the floor and it had been wet on other occasions. *Id.* at 38, 49. Despite this, Pingel says she did not see the liquid on the ground before or after the incident, *Id.* at 52, 62, but did feel that her coat sleeve, jeans, and hand were wet with a substance that was clear and not sticky after she fell. *Id.* at 54-60.

  Two Speedway employees were present in the store at the time of the incident: Kimberly Neph and Bruce Richards. At the time of Pingel's fall, Neph was behind the register, Neph Dep. at 13-14 (Apr. 11, 2014), and Richards was in the cooler. Richards Dep. at 11 (Apr. 11, 2014). Neither employee witnessed the incident. Neph Dep. at 13; Richards Dep. at 11. After the fall, Neph attended to Pingel, Neph Dep. at 13, and testified that Pingel did not mention slipping on a liquid substance at that time, *Id.* at 33, 38. Neither Neph nor Richards observed any liquid on the floor near where Pingel fell except for Pingel's cappuccino, which spilled in the fall. *Id.* at 38-39; Richards Dep. at 27-28. Neph, Richards, and Pingel all testified that a clear liquid on the floor would have been visible. Neph Dep. at 38; Richards Dep. at 28; Pingel Dep. at 61.

Pingel alleges "severe and serious personal injuries" arising from this incident, and claims that Speedway is liable to her for those injuries. Pl.'s Compl. 3. These include—but are not limited to—a fractured hip[1], possible permanent scarring from surgery and treatment, pain and suffering, and expenses related to her injury along with "severe emotional distress and mental anguish, severe embarrassment, gross indignity, humiliation, degradation, aggravation of pre-existing condition, and loss of enjoyment of life." *Id.*

## STANDARD OF LAW

Federal Rule of Civil Procedure 56 allows the court to grant summary judgment if the moving party, "citing to particular parts of materials in the record," FED.R.CIV.P. 56(c), demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). To determine whether summary judgment is appropriate, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence and inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The existence of an alleged factual dispute is not sufficient to defeat summary judgment. *Anderson*, 477 U.S. at 247-48. Rather, there must be no genuine issue of material fact. *Id.* If the moving party meets the

---

[1] In her complaint, Plaintiff refers to her injury as a fractured hip. Pl.'s Compl. 3. In her deposition, Plaintiff refers to her injury as a broken femur. Pingel Dep. at 68.

requirements of Rule 56(c) by demonstrating that there is no genuine issue of material fact, the non-moving party must then provide more than a scintilla of evidence to demonstrate a genuine issue remains for trial. *Id.* at 252. Allegations or denials are insufficient; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* Likewise, speculation and conjecture are insufficient to defeat a summary judgment motion. *See Correia-Massolo v. Bed Bath & Beyond, Inc.*, No. 0814857, 2010 WL 3842352, at *3 (E.D. Mich. Sep. 27, 2010); *Skinner v. Square D Co.*, 445 Mich. 153, 163 (1994).

ANALYSIS

*I.     General Negligence*

Despite Pingel's broad allegations of negligence in her complaint, both parties describe and argue this case as one that lies in premises liability. Michigan courts have made attempts in recent years to separate these two distinct claims—premises liability and general negligence—which are often conflated.[2] *See, e.g.*, *Kwiatowski v. Coachlight Estates of Blissfield, Inc.*, 480 Mich. 1062 (2008); *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 691-92 (2012); *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005). These courts have determined that where the cause of injury is the condition of the premises, the action lies in premises liability, but where the cause of injury is the conduct of the defendant, the action lies in general negligence. *See James v. Alberts*, 464 Mich. 12, 18-19 (2001).

---

2 *See* Ronald C. Wernette Jr. & Eric A. Rogers, Premises Liability vs. General Negligence in Michigan, Michigan Bar Journal, July 2014, at 26-30 (providing the legal background for this area of jurisprudence).

These claims are not necessarily mutually exclusive: a premises liability claim "does not preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct." *Laier*, 266 Mich. App. at 493. However, just because the parties conflate the two legal theories does not necessarily mean a combination of the claims is appropriate. *See Adams v. Adams*, 276 Mich. App. 704, 710-11 (2007). To determine the action, the court must consider the complaint as a whole "beyond mere procedural labels." *Id.*

Michigan courts have rejected general negligence claims except in cases where the claim clearly focuses on the defendant's actions and the defendant's status as the owner of the premises is merely coincidental to those actions. *See, e.g.*, *Kwiatowski*, 480 Mich. 1062 (permitting a general negligence claim because a majority of jurists determined that the harm was caused by the plaintiff's conduct). In *Buhalis v. Trinity Continuing Care Services*, for example, the court found that although a plaintiff asserted that the premises owner's employees caused the dangerous condition, that allegation did not convert the premises liability claim into an ordinary negligence claim. 296 Mich. App. at 691-92. The court said that if the injury "arose from an allegedly dangerous condition" on the premise, the appropriate action is premises liability, "even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Id.*

Pingel makes a premises liability claim. The nexus of her complaint is the "unreasonably hazardous *condition*" of Speedway's premises. Pl.'s Compl. 2 (emphasis added). Her claim does not clearly focus on Speedway's actions, and Speedway's status as the premises owner is not merely incidental to her claim. Thus, her allegations

do not make out a negligence claim. So although her complaint includes allegations that Speedway employees "created, knew, and/or . . . should have known" of the condition on the premises, her action was correctly categorized as a premises liability action per the rule set out in *Buhalis*. Pl.'s Compl. 3.

*II.     Premises Liability*

The parties agree that Michigan substantive law applies to this premises liability action. Also undisputed is the proposition that Michigan case law requires premises owners to maintain their property in a "reasonably safe condition" and establishes their "duty to exercise due care to protect invitees from conditions that might result in injury." *Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85, 90 (1992). At the same time, "there is no absolute duty to warn invitees of known or obvious dangers." *Id.* at 97.

Where a dangerous condition is known to the invitee or "so obvious that the invitee might reasonably be expected to discover [it]," the premises owner has no duty to protect or warn the invitee unless the premises owner should anticipate that harm will occur despite the invitee's knowledge of it. *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 613 (1995). In other words, a condition is open and obvious if "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 474 (1993). This consideration is an objective one, assessing whether a reasonable person in the plaintiff's position, "upon casual inspection," would have known of the danger, not whether a particular plaintiff would have or should have foreseen it. *Slaughter v. Blarney Castle Oil Co.*, 281 Mich. App. 474, 478 (2008); *Kennedy v. Great Atl. & Pac. Tea Co.*, 274 Mich. App. 710, 713 (2007).

The open and obvious doctrine is premised on the assumption that an obvious danger is not a danger to someone exercising reasonable care, and a duty to warn would accomplish nothing. *Slaughter*, 281 Mich. App. at 478. However, if a condition—even one that is open and obvious—bears some "special aspect" which presents an unreasonably dangerous risk of harm, the owner of the premises still has a "duty to undertake reasonable precautions to protect invitees from that risk." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516-17 (2001).

On a motion for summary judgment, "the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm . . . ." *Id.* at 517-18. The court finds that there is not, and accordingly grants Speedway's motion for the reasons set forth below.

*A.   Legal Duty*

Pingel was a business invitee lawfully upon Speedway's premises. Speedway, as a business, owed her a duty to maintain its property in a "reasonably safe condition" and "exercise due care to protect [her] from conditions that might result in injury." *Riddle*, 440 Mich. at 90. However, a business such as Speedway is relieved of its duty when the allegedly dangerous condition is open and obvious and not unreasonably dangerous. *See Lugo*, 464 Mich. at 517. Pursuant to this exception, Speedway argues that it owed Pingel no duty because liquid on the floor marked by wet floor signs on a wet and cold winter day was open and obvious and not unreasonably dangerous. The court agrees.

B.  *Open and Obvious Doctrine*

    i.  *Open and Obvious*

The condition of the floor on which Pingel slipped and fell was open and obvious. Pingel testified that "it was wet out" at the time she entered the store. Pingel Dep. at 35. Michigan courts have held that a wet floor in wet weather is open and obvious because "a reasonable person would likely be aware that there may be water on the floor inside a building as a result of the opening of the outer doors during the rain . . . as well as people tracking it in on their shoes or having it drop from off their person." *See, e.g.*, *Shah v. Bon Ton Dep't Stores, Inc.*, No. 303135, 2011 WL 6793706, at *1 (Mich. Ct. App. Dec. 27, 2011).

Even setting aside the issue of whether the wet floor itself was open and obvious, "CAUTION: Wet Floor" signs in plain view near the cappuccino machine where Pingel fell were certainly open and obvious. *See* Pingel Dep. at 71-72, 81; Def.'s Ex. 5, Photographs at 4-5. In fact, the court has recently had occasion to consider the question of this defendant's negligence under a set of similar facts. *See Finazzo v. Speedway LLC*, No. 114770, 2012 WL 3966371, at *3 (E.D. Mich. Sept. 11, 2012). The court ruled that a wet floor at a Speedway store in Warren, Michigan, was open and obvious because, as in Pingel's case, it was wet out and there were caution signs warning of the condition.

In the instant matter, Pingel acknowledges that she saw the signs and understood that they indicated she should proceed with caution. Pingel Dep. at 66-67, 71-72, 99-100. The use of such a sign makes the danger of a wet floor open and obvious as a matter of law. *See Finazzo*, 2012 WL 3966371, at *3. *See also Maness v.*

*Carlton Pharmacy*, No. 271581, 2007 WL 1575255, at *4 (Mich. Ct. App. May 31, 2007), vacated in part on other grounds by *Maness v. Carlton Pharmacy*, 480 Mich. 1100 (2008).

Despite acknowledging the signs that warned of the condition, Pingel argues that the condition was not open and obvious because, although she was looking at the floor while walking, Pingel Dep. at 38, 49-50, she did not see any liquid on the ground prior to her fall. *Id.* at 52, 54, 57. Pingel highlights that nothing was obstructing her view of the floor or any collection of liquid on the floor, *Id.* at 60-61, and the store was well-lit. *Id.* at 39. These facts do not affect the court's analysis, as the open and obvious test is an objective one. *Slaughter*, 281 Mich. App. at 478; *Kennedy*, 274 Mich. App. at 713. The dispositive determination applied by Michigan courts is not whether Pingel actually saw the liquid, but whether a reasonable person in Pingel's position would have been able to see the condition—here the liquid—or foresee the danger created by it. *See Slaughter*, 281 Mich. App. at 478; *Kennedy*, 274 Mich. App. at 713. Put simply, Pingel's subjective failure to see or foresee the condition of the floor does not bear on this determination.

The evidence demonstrates that a reasonable person in Pingel's position would have seen or foreseen this danger. Speedway employee Neph testified that a clear liquid on the floor would have been visible. Neph. Dep. at 38. Pingel herself confirmed that she reasonably "should have been able to see it." Pingel Dep. at 61. Additionally, it is reasonably foreseeable that there would be liquid on the floor on a wet and cold January day. *See Shah*, 2011 WL 6793706, at *1. Pingel has failed to demonstrate that a genuine issue of material fact exists as to whether the liquid was noticeable to the casual observer, as is required to defeat a motion for summary judgment. *See*

*Notovney*, 198 Mich. App. at 475. The danger associated with the wet floor was open and obvious.

    *ii.    Unreasonably Dangerous*

As noted above, premises owners may still face liability for open and obvious conditions where such conditions pose an unreasonable risk of harm. *Lugo*, 464 Mich. at 516-17. Since the danger associated with the wet floor was open and obvious, Speedway only owed Pingel a duty to protect her if some "special aspect" of the condition rendered it unreasonably dangerous. *Id.* A condition is unreasonably dangerous if it is effectively unavoidable or involves an especially high likelihood of injury. *Id.* at 518. The wet floor here, despite Pingel's allegations, was not unreasonably dangerous.

First, the risk associated with the wet floor was avoidable. Pingel herself admits that she could have taken an alternate route to the ice machine. Pingel Dep. at 60-61. Because Pingel could have used an alternate route to avoid the wet floor, it was not unavoidable so as to negate the open and obvious doctrine. *See Joyce v. Rubin*, 249 Mich. App. 231, 242 (2002).

Second, a wet floor does not, as Pingel alleges, involve an especially high likelihood of injury. This designation is reserved for conditions that are especially severe, *see Lugo*, 464 Mich. at 518, which the defendant should anticipate will cause harm to "ordinarily prudent customers" despite their knowledge of the danger. *Bertrand*, 449 Mich. at 613, 615. In *Lugo v. Ameritech Corp., Inc.*, the Michigan Supreme Court ruled that "typical open and obvious dangers (such as ordinary potholes in a parking lot)" do not involve "an especially high likelihood of injury." 464 Mich. at 520. This is

because an ordinarily prudent person would be able to see and avoid it, and the risk of severe harm is slight for someone tripping and falling a short distance. *Id.* The same is true of a wet floor. A wet floor on a January day is a "typical" occurrence. *See Shah*, 2011 WL 6793706, at *1. Pingel herself testified that she "should have seen the water," Pingel Dep. at 61, and could have avoided it. *Id.* at 60-61. Additionally, at least three other customers traversed the same area without incident only minutes before Pingel fell. Pingel Dep. at 65-67, 96; Def.'s Ex. 5, Photographs at 2-3.

The wet floor in Speedway's store was not unreasonably hazardous, so Speedway owed Pingel no duty to warn or protect. However, even if it did have such a duty, the requirements of that duty were satisfied by the wet floor signs Speedway put out. *See Finazzo*, 2012 WL 3966371, at *3.

While Pingel's situation is certainly unfortunate, she has presented no evidence to create a genuine issue of material fact as to why a wet floor is unreasonably hazardous. Pingel offers a realm of possible explanations for her fall, and cannot rule out any explanations offered by defendants (such as the possibility that the water was tracked in by another customer shortly before plaintiff slipped). Pingel provides no evidence to support her theories of liability, but instead relies on conjecture and speculation. Such conjecture and speculation are not sufficient to sustain a plaintiff's theory of premises liability at the summary judgment stage. *See Correia-Massolo*, 2010 WL 3842352, at *3; *Skinner*, 445 Mich. at 163. Thus, entry of summary judgment for defendant is appropriate.

CONCLUSION

The wet condition of the floor was made objectively open and obvious by the weather and the wet floor signs, and it was not unreasonably hazardous. Thus, Speedway was exempt from its duty to Pingel. Even construing the facts in the light most favorable to Pingel, she does not sufficiently demonstrate a genuine issue of material fact as to whether Speedway is liable for Pingel's injuries pursuant to her fall. Accordingly, Speedway's motion for summary judgment (Doc. 13) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: August 15, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 15, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk